675 A.2d 353

**Michelle BREUNINGER, Appellant,**

v.

**PENNLAND INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1996.

Filed April 26, 1996.

150

Mitchell S. Greenspan, Philadelphia, for appellant.

Frederick T. Lachat, Jr., Philadelphia, for appellee.

Before KELLY, POPOVICH and MONTEMURO *, JJ.

* Retired Justice assigned to Superior Court.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of Delaware County granting summary judgment in favor of Pennland Insurance Company (Pennland) in an action for declaratory judgment instituted to interpret coverage provided by a policy of automobile insurance. The lower court's order was based on its belief that Breuninger (the insured) was entitled to $35,000.00 in uninsured and underinsured motorist coverage (UM/UIM), and not $100,000.00 as was claimed by her.[1] On appeal, the insured contends that the lower court erred when it granted summary judgment in favor of Pennland. Specifically, the insured contends the following: 1) The lower court erred when it found that she knowingly and voluntarily selected $35,000.00 in UM/UIM coverage under her policy with Harleysville Mutual Insurance Company (Harleysville) and 2) The lower court erred when it found that she knowingly and voluntarily selected $35,000.00 in UM/UIM coverage under her policy with Pennland or that, in the alternative, Pennland "stood in the shoes" of Harleysville. After a careful review of the rather recently developed case law in this area, we affirm.

Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Schriver v. Mazziotti*, 432 Pa.Super. 276, 638 A.2d 224, 225 (1994), *alloc. denied*, 539 Pa. 638, 650 A.2d 52 (1994). We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Chrysler Credit Corp. v. Smith*, 434 Pa.Super. 429, 643 A.2d 1098, 1100 (1994). We will only reverse the lower court's grant of summary judgment if there is a manifest abuse of discretion. *Accu–Weather, Inc. v. Prospect Communications, Inc.*, 435 Pa.Super. 93, 644 A.2d 1251 (1994). An abuse of discretion occurs "when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or

1. In this case, the insurance policy at issue was procured by the insured's mother, under which the named insured was covered.

where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Coker v. S.M. Flickinger Co., Inc.,* 533 Pa. 441, 625 A.2d 1181, 1185 (1993). Summary judgment should be granted "only in cases where the right is clear and free of doubt." *Chrysler Credit Corp.,* 643 A.2d at 1100 (citation omitted). "Summary judgment serves to eliminate the waste of time and resources of both litigants and the courts in cases where a trial would be a useless formality." *Liles v. Balmer,* 389 Pa.Super. 451, 567 A.2d 691, 692 (1989).

Keeping this standard in mind, we find that the pertinent, undisputed facts underlying this cause of action are as follows: The insured originally procured automobile insurance from Harleysville. In 1984, the insured's policy with Harleysville became subject to the Motor Vehicle Financial Responsibility Law (MVFRL).[2] On February 24, 1984, the insured was issued an amended declaration page by Harleysville for the period from April 3, 1984 to October 3, 1984, providing liability coverage of $50,000.00 and UM/UIM coverage of $50,000.00. In July 1984, the insured received an "Important Notice" form from Harleysville as was required by Section 1791 of the MVFRL. The "Important Notice" explained that insurance companies were required to make certain benefits available to insureds, including the option to purchase uninsured, underinsured and bodily injury liability coverage up to at least $100,000.00 because of injury to one person in any one accident. In her own handwriting, the insured noted on the "Important Notice" that she wanted $35,000.00 in UM/UIM coverage. However, the "Important Notice" was neither signed nor returned to Harleysville by the insured.

The "Important Notice" indicated to the insured that "Your signature on the Coverage Selection Form or your payment of any renewal premiums evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected." The insured paid the renewal premium and on September 19, 1984, she received a renewal declarations page, effective for the

---

2. 75 Pa.C.S.A. §§ 1701–1799.7.

policy period of October 3, 1984 to April 3, 1985, with liability limits of $50,000.00 and $35,000.00 in UM/UIM coverage.

On February 24, 1987, Harleysville, at the insured's request, issued a renewal declaration increasing the insured's liability coverage to $100,000.00, but leaving the UM/UIM coverage at $35,000.00. The insured received her renewal declaration pages for the policy on a semi-annual basis, and, each time, she indicated which coverage and limits she wanted. On approximately July 14, 1990, Harleysville sent another coverage selection form to the insured. This form again advised her of her options under the MVFRL. Again, the insured indicated on the form that she wanted $100,000.00 for liability coverage and $35,000.00 in UM/UIM coverage. This form was then signed by the insured and was returned to Harleysville.

On approximately February 11, 1991, Harleysville sent the insured a policy jacket and declaration for the period from April 3, 1991 to October 3, 1991, reflecting $100,000.00 for liability coverage and $35,000.00 for UM/UIM coverage. The policy period from April 3, 1993 to November 3, 1993 also reflected $100,00.00 for liability coverage and $35,000.00 for UM/UIM coverage.

On April 3, 1991, Harleysville transferred the insured's policy to Pennland, a wholly owned subsidiary of Harleysville, under the same policy number. This transfer was approved by the Insurance Department of Pennsylvania. Pennland did not send the insured an "Important Notice" form nor any other coverage selection form pursuant to Section 1791. Pennland did send the insured a form entitled "Renewal Notice," whereby she was informed that her coverage was to remain the same.

On August 28, 1993, the insured was struck by a motor vehicle driven by Fernando Tellado. This accident is the genesis of the matter now before us. Shortly after the accident, the insured was paid $15,000.00 by Allstate Insurance Company, who insured Fernando Tellado. Pennland waived any and all subrogation rights which it may have had,

and granted the insured consent to settle in accordance with the policy of insurance under which she was covered.

The insured later made a demand upon Pennland for underinsured motorist coverage benefits of $100,000.00, even though the policy under which she was covered provided for only $35,000.00 in underinsured motorist benefits. The insured argues that she did not knowingly and voluntarily elect the $35,000.00 UM/UIM limit as is mandated by MVFRL. In the absence of a valid election of UM/UIM limits, she argues that the MVFRL mandates that the UM/UIM limit be equal to the bodily injury limit of $100,000.00. The insured further argues that her election was not voluntary because Pennland never provided her with an "Important Notice" form. Pennland admits that it never provided the insured with an "Important Notice" form, but argues that it was not required to do so because of its relationship with Harleysville. Pennland paid the insured $35,000.00, but refused to pay her the remaining $65,000.00 which she claimed.

The insured filed an action for declaratory judgment. The parties cross-filed motions for summary judgment. The lower court held oral argument on these motions, and, subsequently, granted Pennland's motion for summary judgment, thereby determining that the insured was not entitled to the $65,000.00 which she claimed. This appeal followed.

At the outset, we note that there was no genuine issue of material fact regarding the evidence submitted in this case. The only issue to be resolved by the lower court was whether the insured knowingly and voluntarily selected $35,000.00 in UM/UIM coverage as a matter of law. As stated previously, the lower court determined that the insured knowingly and voluntarily selected $35,000.00 in UM/UIM coverage. We find this decision was not an abuse of the lower court's discretion, and, therefore, the lower court properly granted summary judgment in favor of Pennland.

The MVFRL provides that insurers must offer UM/UIM coverage in amounts equal to the bodily injury liability coverage except where the named insured requests in writing

coverage in amounts less than the limits of liability for bodily injury. 75 Pa.C.S.A. §§ 1731, 1733, 1734. *See Tukovits v. Prudential Ins. Co.*, 448 Pa.Super. 540, 672 A.2d 786 (1996). The insurer must inform the named insured that she may reject UM/UIM coverage by signing a specific written rejection form. *Insurance Co. of State of Pa. v. Miller*, 426 Pa.Super. 519, 627 A.2d 797 (1993). In addition, Section 1791 of the MVFRL requires an insurer to furnish the policy applicant with an "Important Notice." This notice must advise the applicant of the types and amounts of coverages which are required to be offered to her. *Motorists Ins. Co. v. Emig*, 444 Pa.Super. 524, 664 A.2d 559 (1995). This notice must also inform the applicant that she may purchase or reject these coverages. *Id.* The applicant must also be made aware that she may purchase coverages in higher or lower amounts than those set forth in the "Important Notice." *Id.* Section 1791 provides the method of apprising an insured of the benefits and limits available pursuant to the statute. That section states that:

> [i]t shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point is given to the applicant at the time of application for the original coverage or at the time of the first renewal after October 1, 1984, and no other notice or rejection shall be required....

*Miller*, 627 A.2d at 799. Section 1791 then sets out the precise language required for the notice which informs the insured of the insurer's statutory responsibility to make certain levels of benefits available and specifies the required amounts. *Miller, supra.* Finally, "[Section] ... 1791 provides '[y]our signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits you have selected.' " *Id.*, 627 A.2d at 799 (citation omitted).

We have held that if the insurer strictly follows Section 1791, there is a conclusive presumption that the insured has

actual knowledge of the coverage available to her under the MVFRL. *Tukovits, supra; Lambert v. McClure,* 407 Pa.Super. 257, 595 A.2d 629 (1991).

In this case, the insured's first argument is that she did not knowingly and voluntarily select $35,000.00 in UM/UIM coverage under her policy with Harleysville. Pennland asserts that Harleysville strictly followed the mandates of Section 1791 when it sent the "Important Notice" to the insured. The insured does not deny that she received the "Important Notice" form from Harleysville, but argues that she neither signed nor returned the "Important Notice" to Harleysville. Pennland contends that the insured's receipt of the statutory "Important Notice," her payment of the renewal premiums and her signature on the coverage selection form operate as a conclusive presumption that she actually knew and understood that her UM/UIM coverage limit was $35,-000.00 instead of $100,000.00. We agree that when Harleysville provided the insured with the "Important Notice" form, a conclusive presumption that the insured had notice of the UM/UIM limits and coverages available was established. *See Emig, supra* (holding that upon receipt of the "Important Notice," a conclusive presumption of notice was established). However, under Section 1734, it is necessary for the insurer to demonstrate that not only did the insured have notice as to the limits and coverages available, but also that the insured voluntarily signed a waiver reducing her UM/UIM coverage. Here, Pennland has demonstrated that Harleysville met this requirement.

Section 1734 requires the named insured to request in writing that the limits of her coverage be lowered. *Emig,* 664 A.2d at 563. Short of a written request by the insured for the lower coverage, Harleysville was not authorized to alter her policy. The "Important Notice" required under Section 1791 is merely a notice to the insured that she must be offered certain benefits in certain amounts which she may accept, reject or reduce. *Id.,* 664 A.2d at 569. "Thus, Section 1791 does not provide the means for selection, rejection or reduc-

tion of these offered benefits.... The 'Important Notice' merely informs ... [the insured] that she is presumed to know and understand those benefits offered and those benefits which she has selected...." *Id.* However, in order for the conclusive presumption of Section 1791 to be effective, an insured must have actually selected coverage, and the selection process must be in conformity with Section 1734, i.e., the insured must have requested in writing a lower UM/UIM coverage.

 Here, it is undisputed that although the insured indicated on the "Important Notice" that she wanted $35,000.00 in UM/UIM coverage, the insured neither signed nor returned the "Important Notice" to Harleysville. Therefore, the insured cannot be found to have requested a lower coverage in writing on this basis. In addition, the insured's payment of her premiums for several years thereafter can not operate as a waiver under Sections 1734 and 1791. *See Botsko v. Donegal Mut. Ins. Co.*, 423 Pa.Super. 41, 620 A.2d 30 (1993) ("The apparent absence of waiver is not changed by the fact that the insured paid the same annual premium for several years thereafter."). However, the record is clear that on July 14, 1990, Harleysville again provided the insured with notice of the UM/UIM coverage options available to her under the MVFRL and provided her with a coverage selection form. The insured signed and returned to Harleysville this coverage selection form whereby she indicated that she wished to reject the stacking of uninsured coverage limits. One of the questions on the coverage selection form was as follows: "Do you want to continue with your current uninsured and underinsured motorist limits? If you answered No, check the box with the limits you desire which cannot exceed your liability limits." The form then provided the insured with the choices of $35,000.00, $50,000.00, $75,000.00, $100,000.00, $200,000.00, and $300,000.00 in UM/UIM coverage. The insured indicated on the coverage selection form that she wished to continue with her then current UM/UIM coverage, signed the form and returned it to Harleysville. The insured admits that when she signed this coverage selection form on July 14, 1990, she was

aware that her then current UM/UIM coverage was $35,-000.00. Based on the insured's receipt of the "Important Notice" and her completion of this coverage selection form, we find that the lower court did not abuse its discretion or commit an error of law when it determined that the insured knowingly and voluntarily selected $35,000.00 in UM/UIM coverage under her policy with Harleysville.

■ The insured's next contention is an issue of first impression in this Commonwealth. The insured argues that when her automobile insurance policy was transferred from Harleysville to Pennland, the latter was required to meet the requirements under Section 1791 of the MVFRL and that it could not simply "stand in the shoes" of Harleysville for this purpose.

The record discloses that on April 3, 1991, Harleysville transferred the insured's policy to its wholly owned subsidiary, Pennland. It is undisputed that Pennland sent the insured a form entitled "Renewal Notice," whereby she was informed that her policy number remained in effect, that her coverage remained exactly the same and that her premium would not be changed. The insured's policy with Harleysville was not cancelled and, therefore, the insured was not required to apply for automobile insurance with Pennland. That is, the insured was never an "applicant" for automobile insurance with Pennland. The only relevant difference between the insured's policy with Harleysville and her policy with Pennland was the name of the insurer. Moreover, the record reveals that the insured never objected to the transfer of her policy to Pennland and that she made her premium payments to Pennland.

It is further undisputed that after the transfer of the insured's policy was completed, Pennland never sent the insured an "Important Notice" form nor any other coverage selection form. The insured alleges that this was in violation of Section 1791 of the MVFRL, and, therefore, it cannot be shown that she knowingly and voluntarily selected $35,000.00 in UM/UIM coverage. We disagree.

Section 1791 of the MVFRL provides, in pertinent part, as follows:

§ 1791. NOTICE OF AVAILABLE BENEFITS AND LIMITS

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten point type is given to the *applicant* at the time of *application for original coverage* or at the time of the *first renewal* after October 1, 1984. . . .

75 Pa.C.S.A. § 1791 (emphasis added). In determining whether Pennland's failure to send the insured an "Important Notice" precludes the application of the conclusive presumption of Section 1791, we are guided by several provisions of the Statutory Construction Act, 1 Pa.C.S.A. §§ 1501 *et seq.* The first provision which we consider is Section 1921. This section provides, in pertinent part, that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. . . ." 1 Pa.C.S.A. § 1921(a). In construing a legislative enactment, we must ascertain and give effect to legislative intention as expressed in the language employed by the statute. *Bonasi v. Board of Adjustment of Haverford Township,* 382 Pa. 307, 115 A.2d 225 (1955).

In addition, under the mandates of Section 1903(a), when the language of a statute is clear, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." 1 Pa.C.S.A. § 1903(a). Statutes are presumed to employ words in their popular, plain and everyday sense, and the popular meaning of such words must prevail unless the statute defines them otherwise or unless the context of the statute requires another meaning. *Treaster v. Union Township,* 430 Pa. 223, 242 A.2d 252 (1968).

We find that the language of Section 1791 is plain, unambiguous and conveys a clear and definite meaning. Also, we find that the context of the statute does not require a meaning

other than the popular, plain and everyday meaning of the words employed. Clearly, as the express language of Section 1791 indicates, the MVFRL requires insurers to provide individuals with notice concerning the availability of UM/UIM coverage only at the time of "application for original coverage" or at the time of the "first renewal after October 1, 1984." Here, the statute does not define the meaning of "application for original coverage" or at the time of the "first renewal after October 1, 1984." Therefore, we shall construe the language of Section 1791 according to its common, plain and everyday meaning. We note that Black's Law Dictionary defines "application" in the context of insurance as "[t]he preliminary request, declaration, or statement made by a party applying for an insurance policy...." Black's Law Dictionary 90 (5th ed. 1979).

The record is clear that the insured never applied for original coverage with Pennland. That is, she never made a preliminary request, declaration or statement in regard to the insurance policy at issue after it was transferred to Pennland. In fact, it would have been impossible for the insured to have done so because the policy held by Pennland was exactly the same policy held by Harleysville. It is undisputed that the insured's policy remained in effect and unchanged when it was transferred to Pennland. In addition, the record is clear that she was provided with notice as to the available UM/UIM coverage prior to her first renewal after October 1, 1984, when the policy at issue was held by Harleysville. Therefore, we find that based on the express language of Section 1791, the legislature did not intend for another "Important Notice" to be sent to the insured by Pennland in this situation. Accordingly, we reject the insured's argument that Pennland was required to provide her with an "Important Notice" form pursuant to Section 1791.

Considering all of the evidence in the light most favorable to the insured, we find that the evidence proved waiver as a matter of law in regard to her UM/UIM coverage. Accordingly, we find that the lower court did not abuse its discretion when it determined that the insured knowingly and voluntarily

reduced her UM/UIM coverage in writing and granted summary judgment in favor of Pennland.

Order affirmed.