Frank J. CEBULA and Dawn Cebula, Plaintiffs,

v.

ROYAL & SUNALLIANCE INSURANCE CO., Defendant.

No. 3:00CV266.

United States District Court, M.D. Pennsylvania.

April 23, 2001.

John J. Terrana, Jr., Kingston, PA, for Frank J. Cebula, Dawn Cebula, plaintiffs.

Kim Hollaender, Manta and Welge, Philadelphia, PA, Margaret E. Wenke, Connor Weber & Oberlies, The Philadelphian, Philadelphia, PA, for Royal and Sunalliance Insurance Company, defendant.

### *MEMORANDUM*

MUNLEY, District Judge.

Before the court for disposition is a case where we must determine whether the plaintiffs are entitled to $1,000,000.00 or $600,000.00 in underinsured motorist coverage.[1] The plaintiffs are Frank and Dawn Cebula, (hereinafter "plaintiffs"), and the defendant is Royal & SunAlliance Insurance Co. (hereinafter "defendant"). The parties agreed that both the defendant's summary judgment motion and the merits of the plaintiff's complaint would be addressed at a non-jury trial. A trial was held on November 22, 2000, addressing the plaintiffs' declaratory judgment complaint and the motion for summary judgment.[2] At that time, the parties formally present-

---

**1.** The defendant concedes that the plaintiff is entitled to at least $600,000.00 in underinsured motorist coverage. In addition, the defendant filed a motion for summary judgment on August 21, 2000 that is now ripe for disposition.

**2.** The defendant removed this case to federal court on February 11, 2000.

ed their recommended stipulated facts and their respective legal theories. After the one-day non-jury trial, and upon review of the parties' submissions, we rule as follows.

**Facts**

Based upon the record, we find as follows:

1. On December 2, 1996, Plaintiff Dawn Cebula was injured in a motor vehicle accident and received One Million Two Hundred Thousand Dollars ($1,200,000.00) from the insurance carrier of the third party who was responsible for the accident.

2. The plaintiffs had purchased a personal automobile policy from the defendant with single bodily injury liability limits of $300,000.00 and single uninsured/underinsured motorist (hereinafter "UM/UIM") coverage of $300,000.00.

3. Covered under the policy were two (2) vehicles, a 1995 Dodge Intrepid, and a 1996 Chevrolet S10 pick-up truck.

4. The plaintiffs subsequently desired to purchase a liability umbrella policy from the defendant.

5. As a prerequisite to purchasing the umbrella policy, the defendant's agent advised the plaintiffs that they had to increase their auto policy limit to $500,000.00.

6. The plaintiffs acquiesced to the agent's advice and a new policy was issued to the plaintiffs which provided for $500,000.00 of bodily injury liability coverage, and $300,000.00 of UM/UIM coverage.

7. Since the Cebulas' owned two motor vehicles and no rejection form was found, Royal & SunAlliance conceded that stacking applies, resulting in six hundred thousand ($600,-000.00) in underinsured motorist coverage under the above referenced policy instead of three hundred thousand ($300,000.00)

8. The plaintiffs never executed a written request for UM/UIM limits lower than the bodily injury liability limits on their policy, as provided in section 1734 of the MVFRL.

9. The policy in question (RDA ED 78–43) is not an original policy, rather, it is a renewal policy and Royal & SunAlliance is unable to locate or produce either a § 1734 writing or signed proof of a § 1791 notice.

10. Plaintiff Frank Cebula did not request UM/UIM coverage that would be lower than his bodily liability coverage.

**Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law". *Knabe v. Boury*, 114 F.3d 407, 410 n. 4 (3d Cir.1997) (*citing* Fed.R.Civ.P. 56(c)). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990). The

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

**Discussion**

**1. Summary Judgment Motion**

■ In addressing the question presented in this case, we will first deal with the summary judgment motion that was filed by the defendant. Having reviewed the briefs and heard the parties' arguments, we conclude that there is a question of material fact that might affect the outcome of the suit. Fed.R.Civ.P. 56; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The plaintiffs object to one of the defendant's findings of fact. The plaintiffs deny requesting underinsured motorist coverage from the defendant which provided for $500,000.00 in liability coverage and $300,000.00 in UM/UIM coverage. Defendant's Recommended Findings of Fact # 2 (hereinafter "Def. Facts").

The plaintiffs objected to this proposed finding of fact by the defendant and presented a witness, Plaintiff Frank J. Cebula, to challenge that assertion. Notes of Trial Testimony, 11/22/00, at 12 (hereinafter "N.T."). In light of this disagreement, we find that there is a question of material

fact, as to whether Mr. Cebula requested insurance in the amounts of $500,000 for liability coverage and $300,000 for UM/UIM. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Since we find that this question is central to the determination of whether the plaintiffs' policy should be reformed, we will deny the motion for summary judgment and will address the issues presented by the parties in the non-jury trial held on November 22, 2000.

**1. Non–Jury Trial**

**A. Section 1734/Section 1791 Compliance**

In order to assess the arguments made by the parties, it is first necessary to set out the law that applies to the instant situation. On October 1, 1984, Pennsylvania enacted the Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL"). This law had a significant impact on the obligations of insurance companies where UM/UIM coverage is concerned. The law requires that insurance companies provide UM/UIM coverage in amounts equal to the bodily injury liability coverage except where the named insured requests in writing, coverage in amounts less than the limits of liability for bodily injury. *See* 75 Pa.C.S.A. §§ 1731 and 1734.

The law further requires that insurance companies provide their customers with a one-time "IMPORTANT NOTICE", at the time of application for original coverage or at the time of first renewal after October 1, 1984, informing them of the benefits available under the MVFRL. 75 Pa.Cons. Stat. § 1791. The statute also provides the language for this "IMPORTANT NOTICE," and states "[y]our signature on this notice or your payment of any renewal premiums evidences your actual knowledge and understanding of the availability

of these benefits and limits as well as the benefits and limits you have selected." *Id.* In the instant case, the defendant concedes that it cannot produce a writing from the plaintiffs in relation to section 1791.

In regard to the required UM/UIM coverage, section 1731 of the MVFRL mandates that all policies issued or renewed after October 1, 1984 must contain UM/UIM coverage "in amounts equal to the bodily injury liability coverage except as provided in Section 1734." 75 Pa.C.S.A. § 1731(a) (emphasis added); *see Government Employees Insurance Co. v. Benton,* 859 F.2d 1147, 1149 (3d Cir.1988).

Section 1734 of the statute provides that:

> [a] named insured may request in writing the issuance of coverages under section 1731 (relating to scope and amount of coverage) in amounts less than the limits of liability for bodily injury but in no event less than the amounts required by this chapter for bodily injury. If the named insured has selected uninsured and underinsured motorist coverage in connection with a policy previously issued to him by the same insurer under section 1731, the coverages offered need not be provided in excess of the limits of liability previously issued for uninsured and underinsured motorist coverage unless the named insured requests in writing higher limits of liability for those coverages.

75 Pa.C.S.A. § 1734 (emphasis added).

Therefore, section 1734 basically allows a named insurer to request in writing, lower UM/UIM coverage limits than the bodily injury liability amounts.

In the instant case, the plaintiffs originally purchased a personal automobile policy from the defendant with liability limits of $300,000.00 and UM/UIM coverage of $300,000.00. At a later date, bodily injury liability coverage was raised to $500,000.00, but the UM/UIM coverage remained at $300,000.00. The plaintiffs never signed a request to reduce their UM/UIM coverage, and it was not, in fact, decreased.

■ The increase in their liability coverage, left the plaintiffs' two coverage limits at $300,000 for the UM/UIM coverage, and $500,000 for the liability coverage. The defendant alleges that there is not a problem in regard to section 1734, since it was the liability coverage that was increased, and the UM/UIM limits were never lowered. N.T. at 40. However, we find that the defendant has not provided any case law in support of the proposition. We find that such a situation is simply not permitted under the insurance laws. "Section 1731 is a simple statement whose plain meaning is apparent from its language. It mandates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in section 1734." *Nationwide Insurance Co. v. Resseguie,* 980 F.2d 226, 230 (3d Cir.1992).

■ The defendant alleges in its recommended findings of fact that Mr. Cebula requested $500,000 in liability coverage and $300,000 in UM/UIM coverage. Def. Facts # 2. However, having reviewed the testimony presented at the non-jury trial, we find that not to be the case. Plaintiff Frank Cebula testified in the non-jury proceeding that when he purchased his policy, he did not request UM/UIM coverage that would be lower than his bodily liability limit.[3] N.T., at 13. Additionally, Plaintiff

---

**3.** Plaintiff Cebula does agree that he wanted to increase his liability limits, however, he

does not agree that he requested that his liability coverage be increased to $500,000,

Cebula testified that when he purchased the policy from the defendant, they did not explain to him the difference between UM/UIM coverage and bodily injury liability coverage. *Id.* We find that the defendant has not provided any evidence to dispute this testimony. If there had been such a request, it could possibly be interpreted as being equivalent to a § 1734 writing, however, the defendant has not provided any evidence that there was a request that the UM/UIM coverage be less than the bodily liability coverage.

■ During the testimony presented at the non-jury trial, the defendant alleged that the fact plaintiffs continued to pay their premium notices after the change in coverage was relevant to the issue of whether there was a waiver by the plaintiffs. However, Pennsylvania courts have held that when an insured does not sign an "Important Notice," but pays the premiums for several years on which lower UM/UIM coverage was indicated, such action cannot operate as a waiver under sections 1734 or 1791. *Breuninger v. Pennland Ins. Co.*, 450 Pa.Super. 149, 675 A.2d 353 (1996).[4]

### B. Reformation

■ We find, therefore, that the defendant did not comply with sections 1734 and 1791. Plaintiffs seek to have their policy reformed as a remedy to the defendant's violation of the law. The plaintiffs ask that the UM/UIM coverage be made equal

to their bodily injury liability limit, which when stacked, would equal one million dollars ($1,000,000.00). The defendant would have us conclude that the non-compliance with sections 1734 and 1791 should not affect the resolution of this case, and that therefore, the plaintiffs' policy should not be reformed.

The defendant argues that the Cebulas' request for reformation of the existing policy should be denied because the text of section 1734 provides no remedy for non-compliance with the provisions therein. In addressing this question, we note that Pennsylvania state courts have repeatedly held that courts are "... required to construe the provisions of the MVFRL liberally in order to afford (the plaintiffs) the greatest possible coverage." *Motorists Insurance Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559, 568 (1995). It is well established that it is in the public interest to afford plaintiffs the greatest possible coverage when construing the provisions of the MVFRL. *Id.*

As we have previously stated, sections 1731 and 1734 are rather straightforward in stating that an insurance company cannot issue a policy in Pennsylvania unless it provides that the UM/UIM coverage is equal to the bodily injury liability coverage. *See Resseguie*, 980 F.2d at 230. That being the case, we must determine whether a remedy is available when there is such a violation of the statute.

---

while his UM/UIM coverage remained at $300,000.

**4.** In the *Breuninger* case, the Pennsylvania Superior Court, in a similar factual situation found that the plaintiff's UM/UIM coverage could not be reformed to equal the liability coverage limit. However, there is one major difference between the *Breuninger* case and the instant case. In *Breuninger*, there was evidence that the defendant complied with the requirements of § 1791 and the plaintiff ad-

mits having received the "Important Notice." *Breuninger*, 675 A.2d at 356–57. In the instant case, the plaintiffs allege that they never received the required Section 1791 "Important Notice" and the defendant presented no evidence to demonstrate that it was, in fact, sent to them. *See Emig*, 664 A.2d 559 (Pa.Super.Ct.1995) (holding that upon receipt of the "Important Notice," a conclusive presumption of notice was established).

After reviewing the cases cited by both parties, we agree with the plaintiffs that the main cases defendant cites in support of the argument against reformation, are factually distinguishable from this case. In those cases, at least one of the named insureds had requested, in some manner, less UM/UIM coverage than liability coverage.

In the *Lewis* case for example, there was a definite request by the insureds to reduce their UM/UIM coverage. *Lewis v. Erie Insurance Exchange,* 753 A.2d 839 (Pa.Super.2000). The *Lewis* plaintiffs argued that their request to reduce their UM/UIM coverage was invalid, because the rejection forms for both UM and UIM coverage were printed on the same piece of paper, in violation of Section 1731.[5] *Id.* at 848. They therefore, requested that their UM/UIM coverage be reformed in an amount equal to their bodily injury liability limit. The Superior Court held that when an applicant chooses a reduction of UM/UIM coverage rather than a rejection of the coverage outright, the fact that an insurance application violates § 1731 by presenting its rejection forms on the same piece of paper, is irrelevant. *Id.*

The *Lewis* court found that reformation was not available where there was non-compliance with sections 1731 and 1734. We find the instant case to be distinguishable. *Lewis* turned on a technical question of two forms being printed on the same piece of paper. In *Lewis,* the court did not reform the insurance, as in that case, the plaintiffs actually requested that the UM/UIM coverage be lower than the liability coverage. In the instant case, however, there was no evidence of any request by the insureds that their UM/UIM coverage be less than their liability coverage.

Therefore, *Lewis* does not apply to the present situation.

The defendant also relies on two recent Pennsylvania Supreme Court cases to support his assertion that no remedy is available. *Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038 (1997); *Donnelly v. Bauer,* 553 Pa. 596, 720 A.2d 447 (1998). Neither of these cases involved the statute at issue and additionally were not overly broad in their holdings. Also, the *Salazar* case, seems to be the closest to the instant situation, yet it only applies to compliance with section 1791.1. Moreover, the instant case differs from *Salazar,* since the plaintiffs in that case actually rejected their UM/UIM coverage. *Salazar,* 702 A.2d 1038. In the instant case, the plaintiffs did not reject their UM/UIM coverage or request that the UM/UIM coverage be lower than the liability coverage.

Defendant has provided no support for the proposition that we cannot reform the plaintiffs' policy. Additionally, the plaintiffs note that a recent decision by the Third Circuit Court of Appeals, which addressed this area of law, provides guidance for the instant situation. In the case of *Nationwide Mutual Insurance Company v. Buffetta,* 230 F.3d 634 (3d Cir.2000), the court did not reform the plaintiff's policy because a section 1734 written request for lower UM/UIM limits had been executed by a former spouse, who actually was a named insured under the policy. Hence, the Third Circuit found no violation of section 1734 in that situation.

In its opinion, however, the Third Circuit Court of Appeals addressed the issue currently before us. The court stated that:

> Interestingly, the case law that has developed regarding this section, which

**5.** According to Section 1731(c.1), rejections of uninsured motorist coverage and of underinsured motorist coverage must be printed on separate sheets.

Ms. Buffetta relies upon [section 1734], has arisen in a different context. In each case, the insurer has claimed that a reduction was authorized, but the argument has focused on whether there was in fact a signed writing that constituted a valid, effective request of a named insured for the reduction. *In the instances in which the insured has been successful [in obtaining reformation], it has been based upon the absence of a valid written request for reduced coverages signed by a named insured.* (emphasis added)

*Id.* at 639.

In the instant case, there was in fact, an "absence of a valid written request for reduced coverages." *Id.* Therefore, we find that the Third Circuit's analysis of this area concluded that reformation is available in certain situations, such as the instant one, where there was no written request by the plaintiff that would allow lower UM/UIM coverage than liability coverage.

In addition, the goal of statutory construction is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). In determining the legislative intent of the MVFRL, we may presume that the General Assembly did not intend an absurd or unreasonable result, and therefore intended no portions of the statute be rendered nugatory by the absence of an explicit remedy. 1 Pa.C.S.A. § 1922(1), (2). Accordingly, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Were we not to allow reformation in the instant case, the relevant portions of the MVFRL, would basically have no effect. In order for the statute to have meaning, it must be enforceable. The MVFRL, as mentioned earlier, ". . . man-

dates that an insurance company cannot issue a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in section 1734." *Resseguie,* 980 F.2d at 230. In order for section 1734 to be given effect, we find reformation in the instant case is necessitated.

Additionally, since the MVFRL is designed, in part, to protect consumers and provide the broadest possible coverage to injured parties, the plaintiffs are among the particular group for whose benefit the statute was enacted. Therefore, in the context of the entire MVFRL scheme, a remedy for the defendant's disregard of sections 1734 and 1791 is consistent with the spirit and purpose of the statute.

**Conclusion**

In conclusion, we find that there was no valid section 1734 election of reduced UM/UIM coverage and that under these circumstances there can be no conclusive presumption of section 1791 notice. In addition, we find that no section 1791 notice was ever provided. Having considered the evidence and arguments of able counsel, and the relevant case law, we find that the plaintiffs are entitled to judgment. The Cebula policy should therefore, be reformed to include $1,000,000.00 of UM/UIM coverage [6] available to the plaintiffs at the time of their loss.

***VERDICT***

**AND NOW,** to wit, this 23rd day of April 2001, pursuant to the attached memorandum, we find in favor of the plaintiffs and against the defendant.

It is hereby **ORDERED** that:

1.  The defendant's motion for summary judgment [7–1] is denied;

---

**6.** Rather than the $600,000 in UM/UIM coverage currently conceded by the defendant.

2. The plaintiffs' automobile insurance policy bearing number RDA ED–78–43 is hereby reformed to include $500,000.00 for each vehicle with a total stacked coverage of $1,000,-000.00 [7] of UM/UIM coverage.

7. The record demonstrates that defendant cannot produce a written waiver required to reject stacking under Section 1738 of the MVFRL. The defendant therefore concedes that stacking applies in the instant matter. Defendant's Trial Brief, at 1; Def. Finding of Fact 3.