**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Robert GILLESPIE and Joyce Gillespie**

**No. CIV.A.03–6167.**

United States District Court, E.D. Pennsylvania.

Oct. 18, 2004.

Brett L. Messinger, Duane Morris LLP, Philadelphia, PA, for Plaintiff.

Michael B.L. Hepps, Schwartzman & Hepps, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm") commenced the instant action seeking a declaratory judgment that the maximum underinsured motorist protection ("UIM") coverage available to the defendants under Policy No. 2945–402–38G is $15,000 per person/$30,000 per accident. The parties have now both filed cross-motions for summary judgment. For the reasons articulated below, the plaintiff's motion shall be granted, the defendant's motion shall be denied and judgment shall be entered in accordance with the plaintiff's prayer for relief.

### History of the Case

This case arose on July 2, 2000 when the vehicle which Defendant Robert Gillespie was driving and in which his wife, Joyce was a passenger, was rear-ended by another car driven by one Robert Hurst. As a result of this collision, Joyce Gillespie was injured. After receiving the policy limits from Mr. Hurst's insurance carrier, Defendants presented a claim for underinsured motorist benefits to State Farm under the three household policies which were in effect on the date of the accident. As there was no dispute that two of the three policies contained UIM coverage of $15,000/$30,000, State Farm paid the applicable policy limits to the defendants on those policies. The plaintiff company has also tendered $15,000 on the remaining policy, despite the defendants' contention that they are owed $100,000 in UIM benefits thereunder.

The policy at issue in this case was originally issued to defendant Robert Gil-

lespie in 1971, long before enactment of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701, *et. seq.* ("MVFRL") in October, 1984. Among other things, the MVFRL required that all policies of motor vehicle insurance issued in Pennsylvania provide uninsured and underinsured motorist coverages in amounts equal to the bodily injury coverage unless the insured requested lower limits in writing. In addition, the MVFRL mandates that insureds be notified of the availability of coverage and it is presumed that notification has been made if an insurer sends to an insured the "Important Notice" prescribed by 75 Pa.C.S. § 1791.

State Farm contends that following passage of the MVFRL, it sent Robert Gillespie a renewal notice and an "Insert About New Law," which contained the language set forth in § 1791. State Farm does not, however, have a copy of the actual notices sent to Mr. Gillespie, although it has a copy of the form renewal notice and insert which it contends were sent out to all of its insureds via an automated mailing system. Mr. Gillespie, in turn, contends that since Plaintiff has not produced any document which has ever been specifically connected to him, it cannot show that he ever received the statutorily-prescribed notices. Thus, Defendants argue that they are entitled to receive UIM benefits under the subject policy at the same level as their bodily injury liability coverage—$100,000 per person/$300,000 per occurrence.

### Standards Governing Summary Judgment Motions

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Under Fed.R.Civ.P. 56(c):

"....The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

Summary judgment is thus appropriate where, viewing the record in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Michaels v. New Jersey,* 222 F.3d 118, 121 (3d Cir.2000); *Jones v. School District of Philadelphia,* 198 F.3d 403, 409 (3d Cir.1999). *See Also: Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 126 (3rd Cir.1994); *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3rd Cir.1989). It should be noted that "material" facts are those facts that might affect the outcome of the suit under the substantive law governing the claims made. An issue of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party" in light of the burdens of proof required by substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 252, 106 S.Ct. 2505, 2510, 2512, 91 L.Ed.2d 202 (1986); *The Philadelphia Musical Society, Local 77 v. American Federation of Musicians of the United States and Canada,* 812 F.Supp. 509, 514 (E.D.Pa.1992). A non-moving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. *Gleason v. Norwest Mortgage, Inc.,* 243 F.3d 130, 138 (3d Cir.2001). Where cross-motions for summary judgment are presented, each side essentially contends that there

are no issues of material fact from the point of view of that party. *Fire & Casualty Company of Connecticut v. Cook*, Civ. A. No. 02–8409, 2004 WL 1813214, \*3, 2004 U.S. Dist. LEXIS 15407 at \*8 (E.D.Pa. July 20, 2004) citing *Bencivenga v. Western Pa. Teamsters*, 763 F.2d 574, 576, n. 2 (3d Cir.1985).

### Discussion

As noted above, both parties here have filed motions for the entry of summary judgment in their favor. In so moving, both parties agree that this case is governed by the following relevant provisions of the MVFRL:

### § 1731. Availability, scope and amount of coverage

**(a) Mandatory offering.**-No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

. . . . .

**(c) Underinsured motorist coverage.**Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following rejection form:

REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

**(c.1) Form of waiver.**-Insurers shall print the rejection forms required by subsections (b) and © on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy, shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

### § 1734. Request for lower limits of coverage

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

## § 1791. Notice of available benefits and limits

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:

### IMPORTANT NOTICE

 Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

. . . . .

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

> Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

> Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

> If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

> If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

If the insurer strictly follows section 1791, there is a conclusive presumption that the insured has actual knowledge of the coverage available to him or her under the MVFRL. *Travelers Indemnity Co. v. Di-Bartolo*, 171 F.3d 168, 174 (3d Cir.1999); *Breuninger v. Pennland Insurance Company*, 450 Pa.Super. 149, 156–157, 675 A.2d 353, 356 (1996). Under section 1734, it is necessary for the insurer to demonstrate that not only did the insured have notice as to the limits and coverages available, but also that the insured voluntarily requested in writing that the limits of coverage be lowered. *Breuninger*, 450 Pa.Super. at 157, 675 A.2d at 357. *See Also, Hayes v. Harleysville Mutual Insurance Company*, No. 995 EDA 2003, 2003 Pa.Super. LEXIS 4157, 841 A.2d 121, 126 (Dec. 1, 2003).

 However, an insurance company does not have to produce a signed § 1791 form in order to establish that one was sent to the insured. *Clifford v. Prudential Property and Casualty Insurance Co.*, No. 3:99cv1788, 2001 WL 1076582, *4, 2001 U.S. Dist. LEXIS 13808 at *12 (M.D.Pa. Aug. 28, 2001). Rather, the insurer must simply demonstrate that it "had a general procedure in 1984 to provide the 'Important Notice' to its customers." *State Farm Mutual Automobile Insurance Company v. Vollrath*, Civ. A. No. 02–1257, 2004 WL 1447836, *4, 2004 U.S. Dist. LEXIS 12077 at * 11 (E.D.Pa. June 28, 2004), citing *Clifford*, 2001 WL 1076582, *3, 2001 U.S. Dist. LEXIS 13808 at *5 and *Nationwide Ins. Co. v. Tantorno*, Civ. A.

No. 90–4639, 1991 WL 24921, 1991 U.S. Dist. LEXIS 2169 (E.D.Pa. Feb.19, 1991).

■ In the case at bar, the record reflects that State Farm had a reliable procedure in 1984 for mailing out the required § 1791 "Important Notice" to its customers, that the procedure was followed, and that the "Important Notice" contained language which mirrored that outlined in the statute itself. (See, Exhibits "B," "C," and "D" to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of its Cross–Motion for Summary Judgment). According to the deposition testimony of William Woolard, a supervisor in State Farm's underwriting department, the plaintiff company sent out the important notice and several other explanatory pamphlets and endorsements about the new law with an existing policyholder's first renewal notice after October 1, 1984 when the MVFRL took effect. (Exhibit "A" to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of its Cross–Motion for Summary Judgment, at pp. 39–40). Mr. Woolard further testified and as the Affidavit of one Gary Dusik, a State Farm mailroom employee, attests, these documents were sent to every policyholder using a Bell & Howell Electronic Inserting Machine which would read a "read-verify" mark and a bar code placed on each premium renewal notice such that if the machine did not properly pull any of the necessary inserts, a sensor in the machine would immediately stop it from operating further. The machine operator would then have to report to the location of the problem to correct it. The mail operations center would also match the daily count of the premium renewal notices and inserts to the count of the postage meter which was also a part of the EIM machine. If the counts did not match, the machine operators would then have to open by hand all of the potentially affected envelopes to determine why the counts did

not match and correct any errors. (Exhibit "A", pp. 41–42; "Exhibit E"). Thus, while we have no reason to doubt Mr. Gillespie's testimony that he has no recollection at all of having received the premium renewal notices and the other forms which were sent with it in 1984 and we acknowledge that no system is 100% foolproof, we nevertheless find that there were sufficient safeguards in place to warrant our conclusion that Mr. Gillespie did, in fact, receive the important notice and that the notice and premium renewal notice adequately apprised him of the coverage available to him under the MVFRL.

Having thus determined that the named insured here received notice of the coverages available under the MVFRL, we next turn to the issue of whether he effectively "waived down" his UIM coverage in writing.

The Supreme Court of Pennsylvania has held that the written "waive down" request need not be on a separate page, as is required under section 1731 for complete waivers of underinsured motorists coverage; rather, it may take any form. *Young v. State Farm Mutual Automobile Insurance Company*, 54 Fed. Appx. 365, 367, 2002 U.S.App. LEXIS 26442 at *5, No. 02–1113 (3d Cir. Dec. 20, 2002), citing *Lewis v. Erie Insurance Exchange*, 568 Pa. 105, 793 A.2d 143, 155 (2002) and *Leymeister v. State Farm Mut. Auto. Ins. Co.*, 100 F.Supp.2d 269, 272 (M.D.Pa.2000). Although the Pennsylvania Supreme Court has yet to address the issue, numerous courts have held that an insured requests lower UIM limits in writing when he has either remitted checks to the insurer for the lower amount or signed a form electing to retain lower UIM coverage limits. *Vollrath*, 2004 WL 1447836, *5, 2004 U.S. Dist. LEXIS 12077 at *14. *See Also, Nationwide Mutual Insurance Co. v. Buffetta*, 230 F.3d 634, 639–641 (3d Cir.2000) (con-

cluding that payment of lower premium amounts every six months for three years before accident demonstrated knowledge and acquiescence in selection of lower coverage); *Clifford*, 2001 WL 1076582, *7, 2001 U.S. Dist. LEXIS 13808 at *21 ("The continued payment of premiums here by Plaintiff Clifford demonstrates actual knowledge and understanding of the availability of benefits"); *Kline v. Old Guard Insurance Company*, No. 1818 MDA 2001, 2003 Pa.Super. LEXIS 431, 820 A.2d 783, 787 (2003) ("The mere payment of renewal premiums evidences the Klines actual knowledge and understanding of the availability of these benefits"); and *Dang v. State Farm Mutual Automobile Insurance Co.*, 1996 WL 421942 at *3 (E.D.Pa. July 19, 1996) ("State Farm's strict compliance with the statute, coupled with the insured's continued payment of renewal premiums, creates a conclusive presumption that the insured had actual knowledge of the coverage available under the MVFRL.")

In this case, it appears that Mr. Gillespie's first premium renewal notice and bill after October 1, 1984 automatically calculated the amount due based upon UM/UIM coverage in the amount of $100,000/300,000. The notice, however, included the following language:

SEE INSERT ABOUT NEW LAW. DUE TO A LAW CHANGE, PERSONAL INJURY PROTECTION, COVERAGE P HAS BEEN REPLACED WITH MEDICAL PAYMENTS COVERAGE C $10,000 AND LOSS OF EARNINGS, COVERAGE Z $5,000. UNINSURED MOTOR VEHICLE, COVERAGE U HAS BEEN REPLACED WITH NEW UNINSURED AND UNDERINSURED MOTOR COVERAGE U WITH LIMITS TO EQUAL YOUR BODILY INJURY LIABILITY LIMITS. IF YOU WANT THESE COVERAGE LIMITS, PAY THE AMOUNT DUE.

IF YOU WANT COVERAGE U WITH YOUR PREVIOUS COVERAGE U LIMITS OF $15,000/$30,000, PAY *(lower amount)*.
IF YOU WANT COVERAGE C1 WITH A $100,000 LIMIT AND TO INCREASE COVERAGE Z TO $50,000, ADD $____ TO EITHER THE AMOUNT DUE OR THE OFFER ABOVE.

State Farm's records indicate that Mr. Gillespie never requested higher UIM limits at anytime between 1971 and the date of the subject accident. (See Exhibits "C" and "H"). Both Plaintiff's records and the testimony of Mr. Gillespie himself reflect that he paid the lower premium to select the same UIM coverage that he had prior to enactment of the MVFRL—15,000/30,000, although he did not really understand what UIM coverage was. (Exhibit "G," pp. 25–43; Exhibit "H").

█ While one of the goals of the legislature in enacting the MVFRL was to establish a liberal compensatory scheme of underinsured motorist protection, containment of insurance costs was another and it is cost containment which has become an increasingly significant one with the General Assembly employing the vehicle of free consumer choice with greater latitude and frequency in furtherance of the cost containment objective. *See Generally, Lewis v. Erie*, 568 Pa. at 123, 793 A.2d at 154; *Nationwide Mutual Insurance Co. v. Cosenza*, 258 F.3d 197, 208–209 (3d Cir. 2001); *Fire & Casualty Company of Connecticut v. Cook*, Civ. A. No. 02–8409, 2004 WL 1813214, *4, 2004 U.S. Dist. LEXIS 15407 at *13 (E.D.Pa. July 20, 2004). Given this trend and in view of Mr. Gillespie's payment of reduced premiums over a period of nearly 16 years, we find that he did thereby elect in writing the lower limits of UIM coverage. In short, the defendants are entitled to what they paid for-$15,000

in UIM coverage. We therefore grant the Plaintiff's motion for summary judgment and deny the Defendant's motion for the same relief in accordance with the annexed order.

### ORDER

AND NOW, this 18th day of October, 2004, upon consideration of the Parties' Cross–Motions for Summary Judgment, it is hereby ORDERED that the Plaintiff's Motion is GRANTED, the Defendants' Motion is DENIED and the Court hereby enters its Declaratory Judgment that the maximum Underinsured Motorist benefit due and payable to Joyce Gillespie from State Farm Mutual Automobile Insurance Company under State Farm Policy No. 2945–402–38G is $15,000 and that State Farm has complied with its obligations under the subject policy by tendering the aforesaid amount.