**Barbara H. SMITH, Appellee,**

v.

**THE HARTFORD INSURANCE COMPANY, Appellant.**

**Barbara H. Smith, Appellant,**

v.

**The Hartford Insurance Company, Appellee.**

Superior Court of Pennsylvania.

Argued March 17, 2004.
Filed April 27, 2004.

Ryan J. King, Pittsburgh, for Hartford.

Joseph M. George, Jr., Uniontown, for Smith.

Before: KLEIN, BENDER and JOHNSON, JJ.

KLEIN, J.

¶ 1 This case comes to us on appeal from cross-motions for summary judgment. Appellant, Barbara Smith, claims the trial court erred in determining the waiver of uninsured/underinsured coverage forms supplied by her insurer, The Hartford Insurance Company, complied with the statutory requirements found in the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. §§ 1701 *et seq.* The Hartford, appellee, claims the trial court erred when it found that Smith was entitled to a new waiver of uninsured/underinsured coverage form when the Smiths significantly increased the liability coverage on their existing policy. We affirm the determination that the forms complied with the statutory requirements and reverse the determination that the Smiths were entitled to a new rejection form.

## History

¶ 2 Wayland Smith[1] purchased automobile insurance from The Hartford in February, 1990. The policy number was not changed throughout the life of the policy. This policy included $300,000 of uninsured/underinsured motorist coverage. However, in June 1990, Wayland Smith, as the first named insured, executed a waiver of underinsured motorist coverage. The rejection of coverage form is on a separate sheet of paper and is signed and dated. No subsequent rejection forms were ever supplied to Smith. Renewal notices supplied in the official record contain a notice printed in all capital letters indicating the policy provides no uninsured or underinsured motorist coverage. It is noted that the policy number never changed throughout the lifetime of policy.

¶ 3 In 1994, Wayland increased the liability coverage on the automobile insurance policy to $500,000. This increase was executed in conjunction with the purchase of an umbrella policy that required the increase. These policies remained in effect, with subsequent renewals, until 1999 when the Smiths were involved in a car accident with an alleged underinsured motorist. Barbara Smith was a guest passenger in the vehicle being driven by her husband when the accident happened. It does not appear that the car they were occupying, a Chevrolet Cavalier, was owned by them. In any event, there is no Cavalier listed on the policy in question.

¶ 4 Because of the injuries she allegedly suffered in the accident, Barbara sought underinsured coverage from The Hartford. She claimed entitlement to this coverage on two theories: 1) the original rejection forms supplied by The Hartford did not comply with the statutory mandates of the MVFRL and so were void; and/or 2) the original waiver was neither knowing nor intelligent.[2]

## Discussion

¶ 5 As noted, the trial court determined the rejection of coverage form supplied by The Hartford and signed by Wayland Smith complied with the statutory requirements of the MVFRL. *See* 75 Pa. C.S. § 1731; and *Winslow–Quattlebaum v. Maryland Insurance Group*, 561 Pa. 629, 752 A.2d 878 (2000). We find no error in this determination. The language of the forms mirrors the language found in the statute. The form is on a separate sheet of paper, emphasizing its importance, as required. The rejection notice is signed and dated as required.

¶ 6 Smith specifically argues the rejection form is not in prominent type or location. However, other than stating that the MVFRL is to be liberally construed and that in close or doubtful cases a policy is to be interpreted in favor of coverage, Smith provides no evidence showing the type or the location are not prominent. The title of the document is in all capital letters, as indicated in the statute. The text is located on the center of the page in such a manner as to make the document readable. The type itself appears to be clearly legible, even though we are supplied only a photocopy of the document. The statute

---

1. Wayland Smith passed away sometime after the accident occurred and the disposition of this lawsuit. His death is not at issue here. There is no contention that anyone other than Wayland Smith, as first named insured, made the relevant changes to the automobile insurance policy at issue.

2. At one time Smith also claimed the signature of her husband was forged. This claim was apparently abandoned after Smith admitted in answers to interrogatories that the signature appears to be her husband's and has no other information to indicate that anyone other than her husband actually signed the document.

provides no requirement for point type, as is found in 75 Pa.C.S. § 1791. The size of the type combined with its location on the page satisfies the Webster's Dictionary definition. of "prominent" that Smith asks us to rely on. That is: it is immediately noticeable or conspicuous. Therefore, Smith is entitled to no relief on this issue.

¶ 7 The next issue is more troublesome. While Smith claimed entitlement to UIM coverage because the rejection was not knowing and intelligent, the trial court avoided that argument and *sua sponte* found that by increasing the policy limits the Smiths had purchased a new insurance policy,[3] thereby requiring The Hartford to supply a new rejection form.[4]

¶ 8 Nonetheless, the trial court held that when something more than a "cosmetic change" is made in an insurance policy, it constitutes a new policy as a matter of law. *See* Trial Court Opinion, at 13. Under this theory, because a "new" policy has been issued the insured is entitled to a new rejection form thereby assuring an informed choice of coverage. There is no statutory authority for such a rule, nor can such a rule be discerned in any prior case law. In fact, the statute indicates just the opposite:

It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least 10 point type is given to the applicant at the time of application for original coverage, **and no other notice or rejection shall be required.**

75 Pa.C.S. § 1791 (emphasis supplied).[5] The General Assembly in writing this certainly knew that the purchase of an insurance policy was not a lifetime contract. Policies are renewed, vehicles are bought and sold, amounts of coverage change. Yet, in spite of this knowledge, the General Assembly has specifically stated that once the applicant has purchased the policy and been informed of the choices available, no other notice or rejection shall be required. The trial court's holding flies in the face of this reality.

¶ 9 The trial court seems to base its decision largely upon the notions that the General Assembly encourages the purchase of UM and UIM coverage, and that it makes no sense for a person of sufficient means to reject coverage for him or herself and family while purchasing coverage for the benefit of strangers.[6] We note that the statutory scheme of the MVFRL is to make certain that strangers are compen-

---

3. It is possible that the argument was made in a brief supporting the motion for summary judgment. However, no briefs regarding the cross-motions for summary judgment are in the official record. Smith's motion for summary judgment is completely silent as to this theory.

4. Because Smith has not made any argument in her appeal regarding the "knowing and intelligent" issue, that argument is waived. Given that her husband passed away before he could give any testimony on this issue, it would be very difficult, if not impossible, to prove this.

5. Receipt of the section 1791 "important notice", advising the insured of the benefits and

limits available, was not raised. The Hartford presented evidence that in the normal course of business the notice was sent to its insureds along with the original rejection forms. In its opinion, the trial court states this affidavit was untimely (and irrelevant). There is no ruling on Smith's motion to strike the affidavit in the official record. However, we do agree that the existence of the section 1791 "important notice" is irrelevant as Smith never made an issue of it.

6. "Why wouldn't a person who was financially able purchase the same limits of coverage for his family and himself that he purchased for the benefit of strangers?" Trial Court Opinion at 12.

sated for the negligence of others. That is, liability insurance (coverage for the benefit of strangers) is absolutely required by the law, while UM and UIM coverage is merely optional. Wise or not, financially able or not, the legislature has made it clear that UM/UIM coverage is not a requirement. As it is not a requirement, it may be rejected. It is not for the courts to second guess the rejection of coverage simply because coverage could have been afforded and the decision to reject the coverage is later proven to be unwise.

¶ 10 Both the trial court and Smith contend support for the new policy theory is found in a variety of "sign-down" cases. An insured person may purchase UM/UIM coverage in an amount lower than the liability limits. 75 Pa.C.S. § 1734. To do so the insured must affirmatively request the lower amount in writing. Case law indicates that when the liability limits change a new request for lower limits must also be submitted or the statutorily mandated equal limits will apply. *See generally Cebula v. Royal & SunAlliance Ins. Co.*, 158 F.Supp.2d 455 (M.D.Pa.2001). Reliance on this case is misplaced. Requiring a new request for lower limits does not equate to the creation of a new policy and subsequent requirement to provide new rejection forms. The requirement of a new request for lower limits is the product of reading sections 1734 (requiring an affirmative written request) with 1731(c.1) (requiring the default amount of UM/UIM coverage to be equal to bodily injury limits). This indicates that while UM/UIM coverage is optional, once it has been purchased the insurer may supply lower limits only upon affirmative request by the insured. The requirement for a new request for lower limits is not based on the premise that a new policy has been issued, but is based upon the statutory presumption that UM/UIM coverage, when purchased, will be equal to the bodily injury limits.

Thus, the change in bodily injury coverage amount is directly tied to the amount of optional UM/UIM coverage that has been elected.

¶ 11 The decision issued by the trial court here ignores the language of section 1791 that clearly states once notice of available coverages and the possibility of rejection of those coverages has been given, no further rejection notice or form is required. The statutory scheme outlined by section 1791 is remarkably similar to that outlined in section 1705, regarding the election of tort options. The full tort option is the default option. If no specific request for tort election is made, the insured is automatically given full tort coverage. However, once an affirmative election is made, that election is presumed to be in effect throughout the lifetime of that policy. *See* 75 Pa.C.S. § 1705(b)(1).

¶ 12 We see little difference in being able to waive the right to seek non-economic damages but for certain circumstances and the ability to reject certain optional coverages. Both statutory schemes provide that full coverage is to be the default option and both clearly state that once an election is made, that decision carries forward until affirmatively changed.

¶ 13 The trial court's decision, while well meaning from the Smith's point of view, is simply not supported by either case law or statutory interpretation. Judgment in favor of Hartford on the issue of statutory compliance of the rejection form is affirmed. Judgment in favor of Smith on the remaining issues is reversed. Case remanded to the trial court for judgment to be entered in favor of Hartford on all issues. Jurisdiction relinquished.