**Jay BLOOD, Appellant,**

v.

**OLD GUARD INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued May 25, 2004.

Filed March 2, 2006.

Michael J. Koehler, Erie, and Scott B. Cooper, Harrisburg, for appellant.

Jeffrey A. Ramaley, Pittsburgh, for appellee.

BEFORE: DEL SOLE, P.J., FORD ELLIOTT, STEVENS, MUSMANNO, ORIE MELVIN, LALLY–GREEN, TODD, McCAFFERY, and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Jay Blood, appeals from the order entered on November 20, 2003, by the Honorable John F. Spataro, Court of Common Pleas of Crawford County, which granted summary judgment in favor of Old Guard Insurance Company in Blood's declaratory judgment action. After careful review, we reverse.

¶ 2 In 1986, Michael and Sharon Blood applied for personal automobile insurance with the Old Guard Insurance Company. In their application, the Bloods requested a liability coverage limit of $500,000.00, with a lower limit of $35,000.00 of uninsured/underinsured motorist ("UM/UIM") coverage per occurrence with a stacking option. It is undisputed, for purposes of this appeal, that this election of lower UM/UIM benefits was properly executed.

¶ 3 On June 16, 2000, the Bloods requested a reduction of their liability coverage limits from $500,000.00 to $300,000.00, among other changes to their policy. The change request form signed by the Bloods included a check mark next to the figure of $300,000.00 for liability limits. The same form listed options for 6 different levels of UM coverage and 6 different levels of UIM coverage. There are no check marks next to any of the UM/UIM coverage options.

¶ 4 Thereafter, on August 19, 2000, Jay Blood, the Bloods' son, was a passenger in a vehicle owned and operated by Jason Soltis. Soltis lost control of the vehicle and collided with several trees on the side of the road. Jay Blood suffered serious injuries as the result of the accident. Soltis's liability insurer paid Jay Blood the limits of Soltis's policy, i.e., $25,000.00. Jay Blood then pursued recovery of UM/UIM benefits from his parents' policy with Old Guard. Old Guard paid Jay Blood $105,000.00, representing a $35,000.00 limit on the coverage for three stacked vehicles owned by the Bloods.

¶ 5 In response, Jay Blood filed the instant action for declaratory judgment, seeking a determination of the UIM policy limits provided in the Old Guard policy. After the completion of discovery, Old Guard filed a motion for summary judgment. On November 28, 2003, the trial court granted Old Guard's motion for summary judgment, finding that the UIM policy limit was $35,000.00 per stacked vehicle. This timely appeal followed.

¶ 6 Jay Blood raises the following issues for our review:

I. Whether the automobile insurance carrier must comply with it's [sic] new coverage selection form which set liability limits at $300,000.00, but did not contain a written selection of lower underinsured (UIM) benefits.

. . .

II. Whether the automobile insurance carrier violated the Pennsylvania motor vehicle financial responsibility law with respect to both section 1791, requiring important notice, and section 1734, requiring an in writing reduction of underinsured motorists coverage limits.

Appellant's Substituted Brief, at 4.

¶ 7 Blood's first argument on appeal is that the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) requires the UIM coverage be the same as the liability coverage because his parents did not explicitly choose a lower level of UIM coverage when they modified their liability coverage. As an initial matter, however, we must address an argument raised by Old Guard regarding this issue. Old Guard contends that the outcome of this case is governed by the Supreme Court of Pennsylvania's decision in *Salazar v. Allstate Ins. Co.*, 549 Pa. 658, 702 A.2d 1038 (1997). We cannot agree.

¶ 8 In *Salazar,* our Supreme Court held that when a court addresses an alleged violation of the MVFRL, it must engage in a two-step analysis. First, the court must determine whether the insurer has actually violated the MVFRL. *Id.* 549 Pa. at 668, 702 A.2d at 1044. If, in fact, the court concludes that an insurer has violated a provision of the MVFRL, the court must then determine whether the MVFRL provides a private remedy. *Id.* If the legislature did not specify a private remedy in the MVFRL, the court may not provide one. *Id.*

¶ 9 This analysis has no application to the issue currently before us. Jay Blood's argument is not that Old Guard violated the MVFRL, but rather, that under the MVFRL the Blood's policy is presumed to have a UIM coverage limit that is equivalent to the bodily injury liability coverage.

A *Salazar* analysis of violations of the MVFRL is therefore inappropriate.

¶ 10 Returning to Jay Blood's first issue on appeal, we note that motor vehicle liability insurance policies may not be issued in this Commonwealth unless UM/UIM coverage is offered. 75 PA. CONS. STAT. ANN. § 1731(a). The insured must be notified of the option to reject UIM coverage and may choose to do so upon signing a specific rejection form. 75 PA. CONS. STAT. ANN. § 1731(b), (c). Absent such a valid rejection, UIM coverage must be provided in an amount equal to the bodily injury liability coverage provided by the policy. 75 PA. CONS. STAT. ANN. § 1731(c.1).

¶ 11 However, an insured may choose to purchase a lesser amount of UIM coverage by affirmatively requesting the lower amount in writing. 75 PA. CONS. STAT. ANN. § 1734; *Smith v. The Hartford Ins. Co.,* 849 A.2d 277 (Pa.Super.2004), *appeal denied,* 581 Pa. 708, 867 A.2d 524 (2005). No specific format is required for the written request for lower UIM coverage; however, the request requires both the signature of the insured as well as an express designation of the amount of UIM coverage requested. *Lewis v. Erie Ins. Exch.,* 568 Pa. 105, 793 A.2d 143, 153 (2002).

¶ 12 The subsequent purchase of higher liability policy coverage does not act to obviate a previous rejection of UIM coverage. *Smith,* 849 A.2d at 280–281. However "when the liability limits change[,] a new request for lower limits must also be submitted or the statutorily mandated equal limits will apply." *Id.* at 281 (citation omitted). The disparate treatment of an outright rejection of UIM coverage as compared to a selection of a lower level of UIM coverage is derived from the legislative intent in creating the two separate requirements. *Id.* The re-

quirement of a written waiver was intended to serve the purpose of providing notice to the insured that UIM benefits were available. *Lewis,* 568 Pa. at 123, 793 A.2d at 153–154. In contrast, the requirement of a written selection of specific UIM limits serves a different, more directed purpose. *Id.* This purpose is to avoid confusion and litigation by providing a presumption that in the absence of an explicit written election, the UIM coverage limit is equivalent to the liability coverage limit. *Smith,* 849 A.2d at 281.

¶ 13 Applying this statutory construct to the case *sub judice,* when the Bloods amended their policy in June of 2000, they completed a document entitled "Pennsylvania Auto Insurance Coverage Selection Form." Under the heading "Liability Limits," several options are listed, with a check mark next to the amount of $300,000.00. Separate headings for UM and UIM coverage are contained in the document, each with several options for coverage level. Old Guard concedes that there was no rejection of UIM coverage contained within this application. Appellee's Brief, at 13. Therefore, absent a signed, written election for lesser coverage, the presumed UIM coverage limit is the same as the bodily injury liability coverage limit. 75 Pa. Cons. Stat. Ann. § 1731(c.1); 75 Pa. Cons. Stat. Ann. § 1734.

¶ 14 The presence of options for declaring the UIM and UM coverage limit on the signed form reinforces this conclusion. Had these options not been present on the face of the form signed by the Bloods, Old Guard's contention that the form was capable only of modifying the liability coverage of the policy may have had some merit. However, those are not the facts presently before this Court.

¶ 15 The presence of options to modify the UIM and UM coverage limits on the form signed by the Bloods cannot be reconciled with a claim that the form only addressed the liability coverage limits. The sections of the form addressing UIM and UM coverage limits were not crossed off or marked as inapplicable. Nor were these options marked to indicate a specific level of coverage. The Bloods signed a coverage selection form where, despite the presence of an explicit option to declare a different UIM coverage limit, they did not do so. Under these circumstances it cannot be plausibly argued that the form had no effect on the UIM limits applicable in the policy.

¶ 16 Of course, as the party responsible for drafting the document, Old Guard was capable of protecting itself from such results. It could have dedicated forms for modification of each type of coverage limit. Alternatively, Old Guard could have a statement on the form that indicates that only initialed sections have effect on the policy. Yet another option would be to have its agents cross off inapplicable sections of the coverage selection form. Having failed to protect itself from misunderstandings in the form it created, Old Guard cannot now turn to this Court to offer it protection. *See 401 Fourth Street, Inc. v. Investors Insurance Group,* 583 Pa. 445, 879 A.2d 166, 171 (2005).

¶ 17 In summary, the "Pennsylvania Auto Insurance Coverage Selection Form" signed by the Bloods on June 16, 2000, contains an explicit option for selecting lower UIM benefits. No such selection was made, nor was this option crossed off or otherwise rendered inoperative. Consequently, the statutory presumption of UIM policy limits equivalent to the bodily injury liability limits was in effect. Old Guard, as the drafter of the document, was in a position to make it clear whether the Bloods were choosing a lower UIM coverage limit. Having failed to protect itself,

this Court is not empowered to reform the contract to reflect Old Guard's contention.

¶ 18 Order reversed. Jurisdiction relinquished.

¶ 19 Judge ORIE MELVIN files a dissenting opinion.

## DISSENTING OPINION BY ORIE MELVIN, J.:

¶ 1 I do not believe that when the Bloods decreased their liability limits an additional election of reduced UM/UIM coverage was required. Therefore, I disagree with the majority's conclusion that in the absence of a new election form, the presumed UM/UIM coverage limit is the same as the liability coverage limit. Because I would affirm the order granting summary judgment in favor of Old Guard, I respectfully dissent.

¶ 2 When an applicant initially purchases an auto insurance policy, it is presumed that UM/UIM coverage will equal bodily injury limits unless the applicant signs a form electing to reject UM/UIM coverage or requests in writing to purchase lower UM/UIM coverage. *See* 75 Pa.C.S.A. §§ 1731, 1734. However, after a rejection or reduction of UM/UIM coverage has been made, the MVFRL does not explicitly require a new UM/UIM sign down form each time a policyholder changes the liability limits. *See* 75 Pa. C.S.A. §§ 1731, 1734, and 1791.

¶ 3 In this case, it is illogical for the majority to reason that the Bloods' written request to *reduce* liability limits could operate to *increase* UM/UIM limits. Moreover, the record reflects that the Bloods, at the time of amendment, already had UM/UIM limits *lower* than the liability limits and that they made *no* request to increase or decrease the present UM/UIM limits. Contrary to the majority, I would not interpret the MVFRL to require an additional sign down form when a prior express reduction of UM/UIM coverage already exists.

¶ 4 In support of its holding, the majority relies in part on *Smith v. The Hartford Insurance Company*, 849 A.2d 277 (Pa.Super.2004), *appeal denied*, 581 Pa. 708, 867 A.2d 524 (2005), which is a UM/UIM rejection case. In *Smith*, Mr. Smith purchased automobile insurance which included UM/UIM coverage in the amount of $300,000. Later that same year, Mr. Smith executed a waiver of underinsured motorist coverage. Four years later, Mr. Smith sought to increase liability coverage on the auto policy to $500,000. In 1999, Mr. Smith and his wife were involved in an accident with an alleged underinsured motorist. Mrs. Smith sought underinsured coverage from Hartford. One of the issues presented to the trial court was whether a new UM/UIM waiver/rejection form was required when the liability limits changed. The trial court found that by increasing the policy limits the Smiths had purchased a new insurance policy which required Hartford to supply a new rejection form related to UM/UIM coverage. On appeal, we reversed and found the change in liability limits did not result in a new insurance contract but the modification of an existing contract. *Id.* at 280. Relying on the language contained in 75 Pa.C.S.A. § 1791, we found that once the applicant has purchased the policy and has been informed of the policies available, "no other notice or rejection shall be required." *Id.* at 280–281. Thus, we concluded no new rejection form was required.

¶ 5 The majority specifically relies on a portion of *Smith* which treated the rejection of UM/UIM coverage differently than the reduction of UM/UIM coverage under § 1734. Concerning the reduction of UM/UIM limits, the majority, citing *Smith*, states that "when liability limits change[,]

a new request for lower limits must also be submitted or the statutorily mandated equal limits will apply." *Smith*, at 281 (citing *Cebula v. Royal & SunAlliance Ins. Co.*, 158 F.Supp.2d 455 (M.D.Pa.2001)); Majority Opinion, at 797. I respectfully disagree with the majority's reading of *Smith*. Upon review, I find this reasoning from *Smith* is *dicta* because reduction of UM/UIM coverage was not at issue there. Moreover, *Cebula*, upon which *Smith* referenced as authority, is clearly distinguishable. In *Cebula*, the district court reformed the auto insurance policy so that UM/UIM coverages were the equivalent of liability limits since the insured *had never* submitted a written request to have his UM/UIM coverage be lower than the bodily injury liability coverage. However, in the present case the Bloods signed a written request for reduction of UM/UIM coverage when they originally purchased the policy.

¶ 6 I believe that the Bloods' reduction of liability limits was a modification to an existing policy. *Smith, supra.* However, I do not find that this modification required an additional election of reduced UM/UIM coverage. Instead, I would find their original election to reduce UM/UIM coverage remained in effect. Accordingly, I dissent.