NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1685
_____

SELECTIVE INSURANCE COMPANY OF AMERICA

v.

ROBYN NOVITSKY, individually and as Executrix of the
Estate of Kevin C. Novitsky, deceased; VILLAGE AUTO SALES, INC.;
PATRICIA NOVITSKY, as Executrix of the Estate of
Clement Novitsky, deceased,

Appellants
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-17-cv-02376)
District Judge: Honorable Robert D. Mariani
_____

Submitted under Third Circuit LAR 34.1(a)
January 13, 2020

Before: HARDIMAN, PHIPPS, and PORTER *Circuit Judges*.

(Filed: January 14, 2020)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

This appeal involves a dispute about insurance coverage following a tragic automobile accident. The question presented is whether Appellants are entitled to insurance proceeds of $1,000,000 or $35,000. The District Court found the lesser amount due under law. Perceiving no error, we will affirm.

I[1]

Appellant Village Auto bought insurance from Selective Insurance Company of South Carolina (Selective-South Carolina) in 1999. Two years later, Appellant Robyn Novitsky, in her capacity as President of Village Auto, signed an uninsured/underinsured motorist's (UM/UIM) coverage selection form that reduced its UM/UIM combined single limit from $1,000,000 to $35,000. The form stated that "[t]hese coverages will remain as outlined above until such time I [*sic*] execute another Coverage Selection Form." App. 87. Ms. Novitsky also signed an "Important Notice," which explained the statutory UM/UIM benefits. That notice specified that Ms. Novitsky understood the statutory requirements along with the benefits and limitations she chose (here, the waiver of UM/UIM coverage).

In 2012, Selective-South Carolina transferred Village Auto's coverage to an affiliate, Appellee Selective Insurance Company of America (Selective-America).

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291. We review the District Court's interpretation of state statutes de novo. *Stiver v. Meko,* 130 F.3d 574, 577 (3d Cir. 1997).

2

Selective-America sent Ms. Novitsky a Notice of Policy Transfer which stated that the old policy would expire and the new policy would go into effect at the same time with no break in coverage. The policy number, coverage, and premium remained the same. Finally, the Notice stated that the insured would deal with the same agent and the transfer required "no further action" by Village Auto except to pay its premium as it "normally would." App. 554. Following the transfer in 2012, Selective-America did not send Village Auto another UM/UIM coverage reduction form to sign.

In 2017, Ms. Novitsky's husband Kevin and her son Clement were killed in a car accident while driving a Village Auto company vehicle. The tortfeasor's insurance carrier distributed the policy limits of $1,000,000 among all claimants, including $789,576.80 to the Novitskys, which was insufficient to compensate them in full. Accordingly, they sought to recover UIM benefits under the Village Auto policy, claiming entitlement to $1,000,000. Selective-America responded that the applicable policy limit was $35,000.

To resolve the parties' dispute, Selective-America filed a declaratory judgment action seeking a judicial determination of the amount of underinsured motorist coverage due under the policy. The parties cross-moved for summary judgment and the District Court granted Selective-America's motion. The Court found that the $35,000 election remained valid following the transfer of the policy from Selective-South Carolina to Selective-America. We agree.

Rather than impose our own view of state law, we must attempt to predict how the state's highest court would rule based on its existing precedent. *See Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996) (citing *Kowalsky v. Long Beach Twp.*, 72 F.3d 385, 388 (3d Cir. 1995)). "In the absence of guidance from the state's highest court, we must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue." *Id.* (citing *Wiley v. State Farm Fire & Cas. Co.*, 995 F.2d 457, 459–60 (3d Cir. 1993)).

Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 PA. CONS. STAT. § 1707 *et seq.*, governs this case. Section 1731 of that law requires insurance companies to "provide UM/UIM coverage equal to the bodily injury liability coverage, unless the insured validly rejects UM/UIM coverage or validly requests lower limits of coverage pursuant to section 1734." *Weilacher v. State Farm Mut. Auto. Ins. Co.*, 65 A.3d 976, 983 (Pa. Super. Ct. 2013) (citation omitted). And an insured may "request in writing the issuance of coverages under section 1731 . . . in amounts equal to or less than the limits of liability for bodily injury." 75 PA. CONS. STAT. § 1734. The statute also presumes that

---

[2] Summary judgment is appropriate when the parties do not contest any facts and the case deals only with legal questions. *Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 179 (3d Cir. 2011). In Pennsylvania, the interpretation of an insurance policy is a matter of law amenable to resolution at summary judgment. *Nationwide Mut. Ins. Co. v. Nixon*, 682 A.2d 1310, 1313 (Pa. Super. Ct. 1996).

the insured knew all its rights upon receipt of an Important Notice (like the Novitskys received here) "at the time of application for original coverage." 75 PA. CONS. STAT. § 1791. These three sections (§§ 1731, 1734, and 1791) must be read together. *See Lewis v. Erie Ins. Exchange*, 793 A.2d 143, 149 (Pa. 2002); *Salazar v. Allstate Ins.*, 702 A.2d 1038, 1041 (Pa. 1997).

The statutory language is clear. We have interpreted Section 1731 to mandate "that an insurance company cannot *issue* a policy in the Commonwealth of Pennsylvania unless it provides UM/UIM coverage equal to the bodily injury liability coverage, except as provided in § 1734." *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 231 (3d Cir. 1992) (emphasis added). The Supreme Court of Pennsylvania later adopted this interpretation. *See Blood v. Old Guard Ins. Co.*, 934 A.2d 1218, 1226 (Pa. 2007). When issuing a new policy, insurers must provide the bodily injury liability coverage, unless the insured requests a lower amount of coverage in writing. "[S]ection 1791 . . . clearly states once notice of available coverages and the possibility of rejection of those coverages has been given [in an Important Notice], no further rejection notice or form is required." *Smith v. Hartford Ins. Co.*, 849 A.2d 277, 281 (Pa. Super. Ct. 2004).

Here, Selective-South Carolina provided Village Auto with a Section 1791 Important Notice, and Village Auto elected $35,000 UM/UIM coverage knowingly, voluntarily, and in writing in 2001. Village Auto's decision to waive UM/UIM coverage is presumptively effective during the life of the policy unless changed. *See Smith*, 849 A.2d at 281; *Sackett v. Nationwide Mut. Ins. Co.*, 919 A.2d 194, 199 (Pa. 2007). Because

5

Village Auto made no changes, Selective-America would have to send a new written reduction form only if the transfer from Selective-South Carolina to Selective-America created a new insurance policy. The Novitskys claim such a new policy was issued.

We agree with the District Court that the transfer did not create a new policy. According to the Novitskys, in 2012 Selective-South Carolina effectively cancelled the Village Auto policy and Selective-America created a new one. The Novitskys argue that because Selective-America "delivered" this new policy without a new Section 1734 waiver the policy carried the UM/UIM $1,000,000 combined single limit. *See* 75 PA. CONS. STAT. 1731(a). Selective-America responds that it merely renewed the Selective-South Carolina policy, with identical terms. The only difference was the insurer.

Pennsylvania precedent supports Selective-America's argument. In *Breuninger v. Pennland Insurance Company*, the appellant was involved in an accident and sought greater UM/UIM coverage than originally selected. 675 A.2d 353 (Pa. Super. Ct. 1996). Like the Novitskys, the appellant in *Brueninger* argued that transferring a policy from one insurer to an affiliate required it to issue a new § 1791 Important Notice and that the waiver of UM/UIM coverage was no longer valid. *See id.* at 354, 358. The Pennsylvania Superior Court disagreed, noting that the appellant's policy number, coverage, and premium remained the same. *Id.* at 358. Further, the appellant never objected to the transfer and kept making payments to the affiliate. *Id.* Because of these factors, the court held it was the same policy, not a new one, so the affiliate had no duty to send a new § 1791 notice. The appellant's prior waiver of UM/UIM coverage remained effective. *Id.*

6

at 359; *see also Snyder v. Liberty Mut. Fire Ins. Co.*, 2013 WL 11257220, at *4 (Pa. Super. Ct. July 31, 2013) ("[T]he transfer of a motor vehicle insurance policy from one company to another does not constitute a 'new' policy.")

Here, as in *Breuninger*, the only difference between the policy at issue following the transfer was the name of the insurer. *See Breuninger*, 675 A.2d at 358. Village Auto kept the same policy number, paid the same premiums, maintained the same coverage, used the same agent, and never had to apply for coverage. When the policy was first issued, Village Auto had notice about the limits and coverages available and voluntarily signed a waiver reducing its UM/UIM coverage. The transfer between insurers acted as a renewal of the same policy, rather than an issuance of a new policy. In view of the similarities between the cases—and because we see no reason why the Supreme Court of Pennsylvania would deviate from the unanimous opinion of the Superior Court in *Brueninger*—we hold that the District Court did not err in finding that Village Auto's election of $35,000 in UM/UIM remained effective after the transfer.

III

We will affirm the District Court's judgment for the reasons stated.